United States District Court
Southern District of Texas
**ENTERED**
March 22, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARIE ENGLISH, | § | |
| | § | |
| *Plaintiff*, | § | |
| VS. | § | CIVIL ACTION NO. 3:19-CV-347 |
| | § | |
| OCWEN LOAN SERVICING LLC, | § | |
| | § | |
| *Defendant*. | § | |

# **ORDER**

In this dispute concerning a home-equity loan, the defendant has moved for summary judgment on limitations. The court agrees that the plaintiff's claims are untimely and grants the motion. Dkt. 18.

In 2004, Marie English[1] applied for a loan to purchase residential property in Galveston County. Dkt. 25 at 4. When English signed the loan, she believed it was also secured by a second residential property which adjoined the first. *See* Dkt. 1-1 at 5. But she was mistaken. The defendant asserts, and English now does not dispute, that the loan concerned only the first property. *See* Dkts. 18 at 9; 19-1 at 17–35; 25 at 5.

---

[1] Another named plaintiff in this lawsuit is Jimmie English, Marie's husband. As Jimmie died in 2017, the parties agree that he should be dismissed from this case. *See* Dkts. 18 at 12–13; 25 at 8. The court so orders.

1

In 2010, PHH Mortgage Corporation became English's loan servicer.[2] Dkt. 25 at 5. According to English, questions soon arose about the taxes being paid out of her escrow account. Dkt. 1-1 at 5. English alleges PHH was debiting her escrow account for "tax disbursement," yet public records failed to show any taxes being paid on the second property. Dkt. 25 at 6. At some point, though she does not say when, English noticed "anomalies in some of the accounting." Dkt. 25 at 18. She "made inquiries," but "never received answers"—and took no legal action. *Id.*

A year later, English began falling behind on her payments. Dkt. 19-1 at 43–46. To avoid foreclosure, English accepted PHH's offer to modify the loan. *Id.* at 148. The loan-modification agreement added $80,000 to English's principal. *Id.* at 40, 150. English asserts that PHH added this amount "without any explanation," Dkt. 25 at 12, but she believed it was to cover the second property, which "was overlooked by all parties during the original loan process." Dkt. 1-1 at 7. At any rate, the loan-modification agreement describes only one property. Dkt. 19-1 at 40. English made the first payment on the modified loan, but ultimately defaulted. *Id.* at 43–46.

Later that same year, 2011, the second property was sold at a tax auction. *Id.* at 73–83. This surprised English, who thought PHH was paying the taxes on it. Yet

---

[2] Ocwen Loan Servicing LLC became PHH Mortgage Corporation following a merger. Dkt. 18 at 7.

2

records show that the Galveston County Tax Office received no tax payments for the property from 2001 to 2012. *See id.* at 91–104. After the tax sale, Deutsche Bank, which had been assigned the loan by English's original mortgagor, acquired the property by re-sale deed. Dkt. 25 at 6.

Boiled down, English alleges three wrongful acts: (1) PHH failed to pay the taxes on the second property; (2) PHH improperly increased English's loan balance; and (3) PHH and Deutsche Bank failed to deed the second property back to her after the tax sale. English concedes that the events giving rise to her allegations occurred, at the latest, in 2012. *See* Dkt. 19-1 at 187.

It wasn't until seven years later, in August 2019, that English sued PHH in state court for conversion, breach of fiduciary duty, breach of contract, promissory estoppel, fraud, negligence, intentional infliction of emotional distress, and violations of the Texas Deceptive Trade Practices Act and the Texas Debt Collections Act. PHH removed the case and moved for summary judgment.[3]

In its motion, PHH attacks English's claims on the merits, but also contends they are barred by the two- and four-year statutes of limitations. To that defense,

---

[3] The claims in this case arise under the substantive law of Texas, which the court faithfully applies. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

English responds with both the continuing-tort doctrine and the discovery rule. But neither argument is persuasive.

Starting with the continuing-tort doctrine, English asserts she has continued to be "charged monthly mortgage payments over the contracted $955.73 per month amount." Dkt. 25 at 19. "Therefore," English concludes, "these actions are still injury[-]producing now." *Id.* But, as the Supreme Court of Texas has held, "the fact that damage may continue to occur for an extended period after accrual does not prevent limitations from starting to run." *Exxon Mobile Corp. v. Rincones*, 520 S.W.3d 572, 592 (Tex. 2017) (quoting *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990)). So English's reliance on the continuing-tort doctrine is misplaced. English's claims accrued when PHH's alleged wrongful acts first effected an injury—at least seven years before she sued. *See Murray*, 800 S.W.2d at 828 (quoting *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)).

English also invokes the discovery rule, under which a cause of action doesn't accrue "until the plaintiff knew, or exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Comp. Assoc. Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).[4] Texas courts limit the rule's

---

[4] In breach-of-fiduciary-duty cases specifically, "the statute of limitations does not begin to run until the claimant knew or should have known of the facts that in the exercise of reasonable diligence would have led to the discovery of the wrongful act." *Little v. Smith*,

4

application to "those cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.* at 456. English says she did not have knowledge of the events giving rise to her claims until spring 2017, "with some information even now just coming to light." Dkt. 25 at 2. She also asserts that PHH was her fiduciary and failed to disclose to her the "relevant facts," including "the tax sale that took place in 2012." *Id.* at 21.

English may be right that she did not actually know of all the events until 2017, but she fails to rebut PHH's contention that she *should* have known much earlier. Take, for instance, her complaints about over-charging her escrow account. English does not dispute that she received annual escrow statements reflecting these charges. Dkt. 26 at 13. So she should have known about the accounting discrepancies as early as 2012.

Take also her complaint about the tax sale of the second property. As PHH points out, "[t]he sale of a property by local taxing authorities is not inherently undiscoverable [because it's] a matter of public record." Dkt. 26 at 9. So even if English did not have actual notice of the sale, the property's re-sale deed was recorded in the real-property records, giving her constructive notice. *See* TEX. PROP. CODE § 13.002 ("An instrument that is properly recorded in the proper county is . . .

---

943 S.W.2d 414, 420 (Tex. 1997).

notice to all persons of the existence of the instrument . . . ."). By failing to rebut PHH's charge that she should have known what was going on with her property, English has failed to show that her injuries were inherently undiscoverable—a requirement for the discovery rule to apply. *Altai*, 918 S.W.2d at 455; *see also HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998).

\* \* \*

Neither the continuing-tort doctrine nor the discovery rule can save English's claims from PHH's limitations defense. Accordingly, the court grants PHH's motion for summary judgment (Dkt. 18) and dismisses all of English's claims.

Signed on Galveston Island on the 22nd day of March, 2021.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE